COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Fulton and Friedman

BARRICK L. McLEMORE, JR.

                                                    MEMORANDUM OPINION*
v.        Record No. 0731-21-2                              PER CURIAM
                                                       DECEMBER 7, 2021
RICHMOND DEPARTMENT
  OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Jacqueline S. McClenney, Judge

(Kate O'Leary; Law Office of Kate O'Leary, on brief), for appellant.

(Keisha Dillard-Brady, Senior Assistant City Attorney; Lynn L.
Robinson, Guardian *ad litem* for the minor child, on brief), for
appellee.


Barrick L. McLemore, Jr. (father) appeals the circuit court's orders terminating his parental

rights and approving the foster care goal of adoption for his child, Z.M. Father argues that the

circuit court erred in terminating his parental rights because the Richmond Department of Social

Services failed to offer him services, made no effort to determine if any services could be provided

while he was incarcerated, and terminated his rights days before his release from incarceration.

Father asserts that the Department made no reasonable and appropriate efforts to reunite him with

Z.M. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without

merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

The Department became involved with father in early March 2018 after Z.M.'s biological mother presented to an emergency room under the influence of drugs.[2] The Department attempted a safety check of Z.M. with father, but father was uncooperative and refused to allow the social worker into his home. The Department also asked father to complete a drug screen by March 8, 2018, but he failed to do so. Father finally agreed to meet with the Department at his mother's home on March 12, 2018 but reported that he was homeless and unemployed. In addition, father's mother was unwilling to allow father to live in her home or act as a temporary placement for Z.M.

Father agreed to meet with the Department on March 16, 2018, to address his unemployment, homelessness, and substance abuse. Father brought Z.M. to the meeting but left before it began to avoid being arrested on outstanding warrants, leaving Z.M with his grandparents, who were unwilling to act as a temporary placement for the child. Consequently, the Department petitioned the City of Richmond Juvenile and Domestic Relations District Court for an emergency removal order.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother's parental rights were terminated in 2019, and she did not appeal that decision.

On March 20, 2018 and March 22, 2018, the JDR court entered emergency and preliminary removal orders. The JDR court subsequently adjudicated that Z.M. was abused or neglected and entered dispositional orders on May 5, 2018. The initial goal was to return Z.M. to his home or find a relative placement. For Z.M. to be returned to father's care, however, the plan required father to complete his jail sentence, complete a substance abuse assessment and follow all recommendations, complete a child abuse assessment and follow all recommendations, refrain from the use of illegal substances, comply with drug screens, and visit with Z.M. on a weekly basis pending negative drug screens.

In April 2018, the Department sent letters to paternal and maternal relatives seeking a placement for Z.M. The Department did not receive any calls from relatives who were interested in caring for Z.M. Father also provided the contact information for his mother and two sisters. Father's mother, however, was unable to care for Z.M. because she already was caring for two other grandchildren, the children of one of father's sisters. Father's second sister was incarcerated.

On October 30, 2018, father was sentenced to ten years' incarceration with six years and six months suspended upon convictions for possession of fentanyl and possession of a firearm by a nonviolent felon. On January 15, 2019, the JDR court approved a new foster care plan that changed the goal to relative placement because there was no progress on returning Z.M. to either parent. Through July 2019, no further progress was made to find a relative placement for Z.M. Father did not request contact with Z.M. during the three years Z.M. was in foster care. In addition, he wrote one letter to Z.M.

On July 19, 2019, the Department petitioned to terminate father's parental rights. On October 15, 2019, the JDR court terminated father's rights to Z.M. and approved the foster care goal of adoption. Father appealed to the circuit court.

In a *de novo* hearing before the circuit court on June 23, 2021, Aisha Washington-Gad, father's family services worker with the Department, testified that she provides parents with information regarding classes they need to take, and it is the parent's responsibility to "schedule [them] on their own." During her time with the Department, Washington-Gad had not been able to schedule substance abuse and parenting classes for incarcerated individuals.

Father testified that he was going to be released from incarceration on June 28, 2021. He planned to live with his aunt once released and gain employment through a family member. Father detailed his daily care of Z.M. before his incarceration. Father alleged that the Department told him they would bring Z.M. to visit with father in the jail, but those visits never happened. Father was willing to participate in the services required by the Department to gain custody of Z.M. but claimed that no parenting classes or substance abuse classes were available in prison. Father also claimed that he provided the name of Brandon Morris, his closest friend, in early 2020 as a relative placement but the Department did not respond. Father believed that his family members would help with childcare.

At the close of the evidence, the Department argued that Z.M. had been in foster care for over three years and father had been incarcerated the entire time Z.M. was in the Department's custody. The guardian *ad litem* recommended that it was in Z.M.'s best interests to be adopted by his foster parents and father's parental rights to be terminated. After hearing the evidence and arguments, the circuit court terminated father's parental rights under Code § 16.1-283(C)(1) and (2). This appeal followed.

ANALYSIS

Father challenges the circuit court's order terminating his parental rights to Z.M. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo

- 4 -

v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)).  "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Under Code § 16.1-283(C)(2), one of the bases for the circuit court's order terminating father's parental rights, a court is authorized to terminate parental rights "if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Accordingly, to grant the Department's petition to terminate parental rights under Code § 16.1-283(C)(2), the court was required to find by clear and convincing evidence that (1) "termination was in the best interests of [Z.M.]," (2) the "Department offered 'reasonable and appropriate' services to [father] to help him substantially remedy the conditions which led to or required continuation of [Z.M.'s] 'foster care placement,'" and (3) "despite those services, [father] failed, 'without good cause,' to [timely] remedy those conditions."  Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 161 (2004).  Indeed, "subsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes."  Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

Father attacks the evidence as to the second requirement above, arguing that the circuit court erred in terminating his parental rights and approving the goal of adoption because the Department "failed to offer any services" to him, which is "a prerequisite to termination of parental rights." He argues that the first step to regaining custody of Z.M. was completing his term of incarceration, but the Department was not aware of any services available to him while incarcerated and "made no effort" to "arrange for visitation at the jail" or "unify the family."

The Department's duty under Code § 16.1-283(C)(2) to make "'[r]easonable and appropriate' efforts" to help a parent remedy the conditions that led to a child's foster care "can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison, 42 Va. App. at 163 (quoting Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)). In Harrison, we rejected the parent's argument that Code § 16.1-283(C)(2) "required the Department to offer him services during his incarceration." 42 Va. App. at 163. Such a requirement would be "patently unreasonable" because "the Department would have had no avenue available to offer [the father] services aimed at assisting him in regaining custody of the child." Id. at 163-64. Moreover, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Here, the record demonstrates that Z.M. had been in foster care for over three years at the time of the hearing before the circuit court and father had been incarcerated the entire time Z.M. was in the Department's custody. Moreover, Washington-Gad testified that no services were available to father while he was incarcerated. Under those circumstances, the Department was

not required to make any efforts to help father remedy the conditions that led to Z.M.'s foster care. Harrison, 42 Va. App. at 163-64. In addition, the record demonstrates that father did not take advantage of services from the Department before his incarceration and failed to cooperate with the Department regarding a home inspection and drug screens. Then, during his three years of incarceration, father made no efforts to visit or communicate with Z.M. outside of a single letter. Thus, the Department did not fail to offer "reasonable and appropriate" services to father, and the circuit court did not err in terminating his parental rights under Code § 16.1-283(C)(2).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." Castillo, 68 Va. App. at 574 n.9; see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). We find that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2); therefore, we do not need to reach the question of whether father's parental rights also should have been terminated under Code § 16.1-283(C)(1).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.